UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARL FLYNN TRUSS,

        Petitioner,                      Case No. 1:13-cv-710

v.                                                    Honorable Janet T. Neff

SHERRY BURT,

        Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999).  After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner Earl Flynn Truss presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Muskegon Correctional Facility. Petitioner was convicted of a federal offense in 1988, for which he was sentenced to a prison term of forty-nine months followed by four years of supervised release. In 1992, after he had been placed on supervised release for his federal offense, Petitioner committed two counts of armed robbery, Mich. Comp. Laws § 750.529, to which he pleaded guilty on May 12, 1992. Petitioner was then sentenced to concurrent prison terms of eight to twenty years for the armed-robbery offenses. The offenses also constituted a violation of Petitioner's federal supervised release, but the federal government deferred enforcement of its supervised-release violation to permit Petitioner to first serve his Michigan prison term.

On August 12, 2005, Petitioner was paroled from the MDOC to federal custody, so that he could serve the period of incarceration imposed as a result of the violation of his federal supervised release. The state parole order imposed a two-year period of parole, expiring August 12, 2007. (Attach. 1 to Pet., MDOC Parole Bd. Notice of Parole, docket #1-1, Page ID#43.) It required that, if Petitioner was released from federal custody before the expiration of his state parole term, he must contact and report in person to his state parole agent. (*Id.*) It also required Petitioner to pay a crime victim's assessment fee of $60.00, as ordered in his judgment of sentence. (*Id.*)

A few months before his release from federal prison, Petitioner and federal authorities asked the state authorities in Michigan for a certificate of discharge from his state parole, but they received no answer. In August 2007, Petitioner's state parole agent requested an extension of Petitioner's parole term because Petitioner had not paid the crime victim's assessment fee. On

August 21, 2007, the Michigan Parole Board approved the extension of Petitioner's parole until August 1, 2018. (Attach. 1 to Pet., MDOC Order for Parole Extension, docket #1-1, Page ID#98.)

In September 2007, Petitioner was moved from a federal prison to a federal halfway house. Petitioner violated the rules of the halfway house and was sent to the William Dickerson Detention Facility ("Dickerson") in Detroit, Michigan. In March 2008, while he was at Dickerson, Petitioner received a visit from his state parole agent, who informed Petitioner that his parole had been extended until August 2018.

In 2009, after Petitioner was released from Dickerson, and while he was on extended parole, Petitioner again committed armed robbery, and his parole was revoked. He pleaded guilty to the offense, and was sentenced on February 11, 2010, to a new prison term of 15 to 40 years. Because Petitioner was on parole at the time of the 2009 offense, state law required that his 2010 sentence be served consecutively to the sentence for which he was on parole. *See* Mich. Comp. Laws § 768.7a(2).

Petitioner appealed the 2010 judgment of conviction and sentence to the Michigan Court of Appeals and the Michigan Supreme Court. Those courts denied leave to appeal on October 14, 2010, and March 29, 2011, respectively. Petitioner then filed a complaint for habeas corpus relief in the Manistee County Circuit Court on August 5, 2011, pursuant to Rule 3.303 of the Michigan Court Rules. (*See* Pet., docket #1, Page ID#4.) Petitioner asserted that his parole was extended in violation of his constitutional right to due process and in violation of MDOC policy and state law. The circuit court denied the petition for habeas relief on December 21, 2011.

Petitioner appealed the circuit court's decision to the Michigan Court of Appeals and the Michigan Supreme Court. The Michigan Court of Appeals denied his appeal on October 5,

2012, for lack of merit in the grounds presented. The Michigan Supreme Court denied leave to appeal on March 4, 2013, because it was not persuaded that the questions presented should be reviewed by that court.

In the instant action, Petitioner raises the same issues presented in his complaint for habeas corpus relief. In other words, he contends that his 2010 judgment of sentence is invalid because it is based, in part, on his status as a parolee at the time that he committed the underlying offense. According to Petitioner, the Michigan Parole Board improperly extended the term of his parole after it had expired, without giving him proper written notice or a hearing. He also contends that it lacked jurisdiction to extend his parole because the parole period had already expired when it decided to make the extension.

**Discussion**

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly

established federal law is "objectively unreasonable." *Id.* at 410. Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011); *see also Johnson v. Williams*, ___ S. Ct. ___, 2013 WL 610199, at *6 (Feb. 20, 2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference).

The presumption, however, is not irrebuttable. *Johnson*, 2013 WL 610199, slip op. at *8. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Richter*, 131 S. Ct. at 785 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA also requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656.     **A. State Law**

Petitioner asserts that the Michigan Parole Board did not have authority to extend his

parole on August 21, 2007, because it lost jurisdiction over him when his parole term expired on August 12, 2007.  Petitioner also contends that it did not notify him of the extension in writing as required by MDOC rules and state law.  Petitioner cites Mich. Comp. Laws § 791.242(1), which provides that:

> If a paroled prisoner has faithfully performed all of the conditions and obligations of parole for the period of time fixed in the order of parole, and has obeyed all of the rules and regulations adopted by the parole board, the prisoner has served the full sentence required. The parole board shall enter a final order of discharge and issue the paroled prisoner a certificate of discharge.

*Id.*  The circuit court, however, determined that the parole board still had jurisdiction over Petitioner because it had not entered a discharge order, Petitioner had not fully complied with the parole order (because he had not paid the victim's assessment fees), and his sentence had not yet expired.

The issue of whether the parole board complied with state law or had jurisdiction to extend Petitioner's parole is a question of state law.  A violation of state law is not a basis for relief under § 2254.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241).

### B. Due Process

Petitioner also contends that the extension of his parole without notice or a hearing violated his right to due process under the Constitution.  To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v.*

*Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Petitioner apparently claims that he has a liberty interest in discharge from parole on the date set forth in a parole order. The state court implicitly rejected this claim, holding that the expiration date in the parole order created a "mere expectancy of [discharge from] parole at most," if Petitioner faithfully performed the conditions of his parole. But Petitioner did not fulfill those conditions and he was not issued a discharge order in accordance with Mich. Comp. Laws § 791.242(1). (*See* docket #1-1, Page ID#82.)

There is no constitutional or inherent right to be released before the expiration of a prison sentence. *Greenholtz*, 442 U.S. at 7. Even the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in early release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). A liberty interest is present only if the petitioner has a "legitimate claim of entitlement to" it, a claim that can be created only by the operation of state law. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir.1991) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979)).

In *Sweeton v. Brown*, 27 F.3d 1162 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in release on parole. *Id.* at 1164-65. In addition, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999). More recently, the Sixth Circuit held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011).

According to *Crump*, the most "salient factor" in determining whether a parole statute creates a liberty interest in early release on parole is "whether the statute contains mandatory language that creates a presumption of release when the designated findings are made." *Id.* at 399. "The mandatory language may be found in a statute, a regulation, or even 'policy statements . . . or other official promulgations' by parole or prison officials." *Id.* (quoting *Beard v. Livesay*, 798 F.2d 874, 877 (6th Cir. 1986)). Petitioner argues that the mandatory language in Mich. Comp. Laws § 791.242(1) creates a liberty interest in discharge from parole, because it states that the parole board "shall" enter an order of discharge "if" the parolee has "faithfully performed all of the conditions and obligations of parole for the period of time fixed in the order of parole, and has obeyed all of the rules and regulations adopted by the parole board . . . ." *Id.* However, as with the grant of parole itself, the period of time set forth in the parole order is a matter of discretion. The parole board was not required to parole Petitioner for any period of time, and its decision to give him a two-year period of parole did not limit its ability to extend that period. Indeed, Michigan law makes clear that the parole board retains discretion to amend parole orders. *See* Mich. Comp. Laws § 791.236(3) ("A parole order may be amended at the discretion of the parole board for cause."). In addition, Michigan courts have held that the parole board can extend the parole period without a hearing. *Lane v. Mich. Dep't of Corr., Parole Bd.*, 173 N.W.2d 209, 211 (Mich. 1970); *see also In re Wayne Cnty. Prosecutor*, 591 N.W.2d 359, 361 (Mich. Ct. App. 1998) ("Although the statutes no longer expressly so provide, the length of the parole period is generally discretionary with the Parole Board.").

Similarly, several courts have held that, because there is no liberty interest in early release on parole, then, by extension, there is no liberty interest in full release upon the expiration

of a parole order. *See Hulvey v. Sampson*, No. 1:10-cv-122, 2010 WL 4923488, at *2 (W.D. Mich. Nov. 1, 2010) ("Because Plaintiff has no liberty interest in parole, he cannot challenge the procedures by which his term of parole was extended."), *report and recommendation adopted*, 2010 WL 4923484 (Nov. 29, 2010); *Oakes v. Danhof*, No. 1:09-cv-952, 2010 WL 3734048 (W.D. Mich. June 22, 2010) (rejecting claim that the extension of parole violated due process, because there is no liberty interest in obtaining release on parole), *report and recommendation adopted*, 2010 WL 3734031 (Sept. 20, 2010); *Williams v. Caruso*, No. 08-10044, 2009 WL 960198 (E.D. Mich. Apr. 6, 2009) (same); *Hershey v. Scutt*, No. 08-cv-15271, 2009 WL 2144322 (E.D. Mich. July 13, 2009) (same); *Barnett v. Timmerman-Cooper*, No. 2:06-CV-673, 2008 WL 420042 (S.D. Ohio Feb. 14, 2008) (same for Ohio). In other words, the parole order created, at most, a mere expectancy that Petitioner would be released at the end of the specified parole term. It did not further constrain the parole board's ability to dictate the length of his parole, such that he was automatically entitled to release when the term expired. Moreover, it was expressly conditioned on full compliance with the terms of the order; Petitioner does not contend that he fully complied by paying the victim's assessment fees. Consequently, the parole board did not violate Petitioner's right to due process when it extended his term of parole without advance notice or a hearing.

        Petitioner cites *Morrissey v. Brewer*, 408 U.S. 471 (1972), in which the Supreme Court held that a parolee is entitled to due process before his parole is revoked and he is returned to prison for a parole violation. The Court reasoned that "[w]hether any procedural protections are due depends on the extent to which an individual will be condemned to suffer grievous loss." *Id.* at 481. A parolee is due some process before being returned to prison, because "the liberty of a parolee . . . includes many of the core values of unqualified liberty, and [parole] termination inflicts

a grievous loss on the parolee[.]" *Id.* at 482. In contrast, Petitioner does not complain about a "grievous loss" of liberty; instead, he complains that the Michigan Parole Board maintained his status as a parolee. Consequently, *Morrissey* is distinguishable. *Cf. Akrawi v. Remillet*, 504 F. App'x 450, 452-53 (6th Cir. 2012) (holding, for purposes of qualified immunity, that *Morrissey* does not clearly establish a right to due process when being returned to parole). Petitioner has identified no decision by the Supreme Court, or any other federal court, holding that a parolee is entitled to due process when his term of parole is extended beyond the date set forth in a parole order. *See King v. N.Y. State Div. of Parole*, 260 F. App'x 375, 379-80 (2d Cir. 2008) (rejecting due process claim where a parolee was mistakenly discharged and then returned to parole, because of a "total absence of authority" in support of the claim). Thus, the state court's decision was not contrary to, nor did it involve an unreasonable application of, "clearly established Federal law" within the meaning of 28 U.S.C. § 2254(d)(1).

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly

unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal

of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated: October 3, 2013          /s/ Janet T. Neff
                                Janet T. Neff
                                United States District Judge